IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FELIX MARTINEZ,

                Petitioner,

vs.

WARREN MONTGOMERY,

                Respondent.

No. 2:17-cv-02194-JKS

MEMORANDUM DECISION

Felix Martinez, a state prisoner represented by counsel, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Martinez is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Calipatria State Prison.  Respondent has answered, and Martinez has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

On June 17, 2014, Martinez was charged with attempted aggravated mayhem (Count I), attempted mayhem (Count II), battery with serious bodily injury (Count III), mayhem (Count IV), assault with a deadly weapon (Count V), possession of a firearm by a felon with a prior conviction (Counts VI and VII), and failure to appear (Count IV) in an information that consolidated the allegations of four complaints (apparently without consolidating the four cases). In addition to other enhancements, the consolidated information further alleged as to all counts that Martinez suffered a prior conviction for a serious and/or violent felony pursuant to California's Three Strikes law.  At focus in the instant Petition are the charges stemming from a December 2013 attack on a fellow jail inmate.  On direct appeal of his conviction, the California

Court of Appeal recounted the following facts underlying the charges stemming from that event

(Counts I through III) and the evidence presented at trial:

> [Martinez's] cellmate (who was still in jail at the time of [Martinez's] trial)
> testified [Martinez] was a member of a Los Angeles subset of an umbrella criminal
> gang;[FN3] the cellmate was a member of a different local subset.  [Martinez] negotiated to
> obtain the role of "shot caller" in the jail after its previous holder was released, a position
> to which inmate members of the various subsets of the umbrella gang owed obedience
> regardless of [Martinez's] out-of-town affiliation.  Failure to heed his orders would result
> in discipline, which could be anything from a beating to a stabbing.

>> FN3.   The gang expert first became aware that [Martinez] was living in Tehama
>> County during a parole sweep of gang members in 2004 or 2005.
>> [Martinez] owned property locally, and did not involve himself directly
>> with the local subsets of the umbrella gang because this would have
>> diminished his stature as a Los Angeles member.

> There was a power struggle occurring between [Martinez] and a rival inmate, who
> had also claimed the role of shot caller but was falling out of favor with fellow gang
> members.  On Christmas Day, [Martinez] told his cellmate that they would be
> disciplining the victim.  The victim had not heeded a directive to disregard the rival
> inmate, who was a friend of the victim.  On the following morning, there was an
> announcement that there would be yard time.  [Martinez] and his cellmate went to the
> victim's cell.  (As members of the same gang, the inmates were released to participate as
> a group in activities such as yard time.)  At [Martinez's] direction, the cellmate entered
> the victim's cell first and held him in a bear hug, rolling him to the floor.  [Martinez] had
> said that he intended to stab the victim's face and cut out his eyes.  As the cellmate
> watched, [Martinez] swung overhand about a dozen times, striking the victim's face.  The
> victim called [Martinez] by his nickname and asked why he was doing this.  As
> [Martinez] was being taken away from the cell, he shouted to the nearby rival inmate that
> the rival would be next.
> The cellmate acknowledged that his act of testifying would not be acceptable at
> all to his gang, which would "green light" him for violent retaliation.  He had dropped
> out of the gang after the incident and was in protective custody.
> A guard responded to the attack.  He pulled the cellmate out of the victim's cell
> and told him to get on the ground.  The cellmate did not immediately comply with the
> order.  The guard also ordered [Martinez] to get on the ground; [Martinez] complied, and
> the guard handcuffed him.  The cellmate had blood on his hands; [Martinez] was covered
> with blood but uninjured.[FN4]  The victim's face was bleeding profusely; it appeared there
> was a cut on his right eyelid.  At the hospital, the victim purported not to be able to
> identify his assailants; when the guard provided him with their names, the victim simply
> said "Those fuckers."  A piece of a bloody pencil was retrieved from the toilet next to
> which [Martinez's] cellmate had been standing; other parts of it were on the floor and on

a table next to the toilet.  The victim suffered a one-centimeter cut to his right eyelid and corneal abrasions in both eyes.

> FN4.   In his petition for rehearing, [Martinez] requests that the opinion be more detailed about the precise manner in which he was covered with blood. This is not the same as saying that our statement of facts is inaccurate; nothing prevents [Martinez] from citing to the exact manner in which his appearance is described in the record in any future petition for review.

Another inmate who was a former member of another East Los Angeles subset of the umbrella gang had received a message from [Martinez] (with whom he was familiar "from the street" in Corning) directing him to join in an attack on the victim and the rival inmate.  Because he considered himself a dropout from the gang since 2005, he did not comply.  The former gang member's cell was one level up and across from the victim's cell.  He could see the front half of it.  On the morning of the attack, he saw [Martinez] and his cellmate go into the victim's cell, and could hear the victim screaming.  He heard the victim calling [Martinez] by his nickname and asking why he was attacking him. When the guards arrived, [Martinez's] cellmate came out of the cell and lay down on the floor, at which point other guards used a Taser on him.  He thought he heard [Martinez] warn the rival inmate that the rival would be next while the guards were taking [Martinez] away.  The former gang member also acknowledged he was at risk of retaliation both because he did not obey [Martinez], and because he was testifying against him.

The victim stonewalled.  He denied knowing anyone with the name of [Martinez], [Martinez's] cellmate, the former gang member, the rival inmate, or the captain in charge of the jail who interviewed him in January 2014.  He at first acknowledged recognizing [Martinez] as someone he had seen in the jail, though later testified that he had never seen [Martinez] before.  He did not know anyone with [Martinez's] nickname.  He did not have anything to say about his injury.  He was not a member of a gang or familiar with any gang.  He denied being afraid to testify.

The jail captain had testified multiple times as a gang expert.  He confirmed that the former gang member had been documented as a gang dropout, and that one could see the front portion of the victim's cell from the vantage point of the former gang member's cell.  He recalled being told of [Martinez] threatening the rival inmate while being taken away (a threat that the jail staff took seriously enough to transfer the rival to a jail in another county), even if this was not reflected in the written reports.  A shot caller does not ordinarily inflict discipline personally, but the captain thought [Martinez] did so to emphasize his control over the unit.  Although he was aware of conflict among the gang members in the unit, he had previously been under the impression that the rival inmate was the shot caller (albeit with waning power), and only learned after the incident of [Martinez's] holding that status.  In the captain's opinion, the victim testified in a manner consistent with the way any gang member called as a witness would testify.[FN5]  Given that the victim had previously interacted with the various witnesses, it would be "strange" for him to claim that he did not know them.  It is uncommon for gang members such as

[Martinez's] cellmate and the former gang member to give testimony in support of the prosecution.

> FN5.   The trial court overruled defense counsel's objection to this testimony.

> Defense counsel argued in closing that the cellmate was the actual assailant responsible for the attack on the victim, and was part of an attempt to deflect blame to [Martinez].  Counsel contended [Martinez] was not really the shot caller of the unit.

*People v. Martinez*, No. C077727, 2016 WL 890341, at *1-3 (Cal. Ct. App. Mar. 25, 2016).

At the conclusion of trial, the jury convicted Martinez of all charges.[1]  The trial court sentenced Martinez to an aggregate term of more than 34 years' imprisonment.

Through counsel, Martinez appealed his conviction, arguing that the trial court erred by: 1) allowing an expert witness to offer an opinion on why various gang eyewitnesses testified as they did; 2) striking the response of a witness as irrelevant; 3) failing to instruct the jury on how it should evaluate expert testimony; 4) failing to fashion an instruction on the elements of failure to appear; 5) instructing on the use of Martinez's prior convictions when assessing his credibility; and 6) imposing multiple on-bail enhancements for a single period of "own recognizance" release.  The People conceded the final argument, but otherwise opposed Martinez's appeal.  The Court of Appeal reversed the conviction for failure to appear based on that error, but unanimously affirmed the judgment in all other respects in a reasoned, unpublished opinion issued on March 9, 2016.  *Martinez*, 2016 WL 890341, at *6.  The California Supreme Court summarily denied Martinez's petition for review on June 15, 2016.

Martinez then filed a counseled petition for writ of habeas corpus in the California Superior Court.  In that petition, Martinez averred that trial counsel rendered ineffective

---

[1]       Martinez also admitted the various special allegations that were attached to the nine counts.

assistance by failing to: 1) adequately cross-examine certain witnesses; 2) thoroughly investigate possible defenses; and 3) file a motion to sever.  Martinez further argued that the cumulative effect of counsel's alleged errors warranted reversal of his conviction, and that appellate counsel was deficient for failing to raise those issues on direct appeal.  The Superior Court denied the claims without holding an evidentiary hearing in a reasoned, unpublished opinion issued on April 26, 2018.  Martinez raised the same claims in counseled habeas petitions filed in the California Court of Appeals and the California Supreme Court, which were denied without comment on July 19, 2018, and March 13, 2019, respectively.

While his state habeas petitions were pending, Martinez timely filed the instant counseled Petition for a Writ of Habeas Corpus in this Court on October 19, 2017.  Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1),(2).  This Court, through a previously-assigned magistrate judge, stayed these proceedings while the state courts adjudicated Martinez's claims. Briefing on this case is now complete, and the matter is before the undersigned judge for adjudication.

## II. GROUNDS/CLAIMS

In his counseled Petition before this Court, Martinez argues, as he did before the state courts on habeas review, that trial and appellate counsel rendered ineffective assistance.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,"

§ 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary

authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court.  *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)).  A summary denial is an adjudication on the merits and entitled to deference.  *Harrington v. Richter*, 562 U.S. 86, 99 (2011).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Martinez argues that both trial and appellate counsel rendered ineffective assistance for a variety of reasons.  To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984).  A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief.  *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v.*

7

*United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95.  Where a habeas

petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice

standard is applied and federal courts do not engage in a separate analysis applying the *Brecht*

harmlessness standard.  *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin*

*v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009).  Under this rubric, in reviewing ineffective

assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's
> determination" under the *Strickland* standard "was incorrect but whether that
> determination was unreasonable—a substantially higher threshold."  And, because the
> *Strickland* standard is a general standard, a state court has even more latitude to
> reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v.*

*Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Martinez must show that either his trial or appellate counsel's representation was

not within the range of competence demanded of attorneys in criminal cases, and there is a

reasonable probability that, but for counsel's ineffectiveness, the result would have been

different.  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985).  An ineffective assistance of counsel

claim should be denied if the petitioner fails to make a sufficient showing under either of the

*Strickland* prongs.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test

first and need not address both prongs if the defendant fails on one).

1.      ***Trial Counsel***

Martinez first faults trial counsel for "failing to properly cross-examine key witnesses."

According to Martinez, counsel should have cross-examined two cellmate witnesses regarding

deals they had made with the prosecution in exchange for their testimony.  The record reflects

that trial counsel asked prosecution witness Anthony Dyer if, in exchange for his testimony, he had agreed to be sentenced to four years' imprisonment instead of the 30-year exposure he faced. The witness answered affirmatively.  According to the record, however, Dyer actually made a deal that his 30-year exposure would be reduced to probation.  The record further reflects that counsel elicited no information regarding the deal Ramon Rueles made with the prosecutor whereby a felony charge Rueles faced would be reduced to a misdemeanor.[2]

Martinez raised this claim to the California state courts on habeas review.  In the last reasoned opinion, the Superior Court denied the claim, reasoning that "based upon the testimony presented by both witness Dyer and witness Ruelas, counsel may have had a tactical reason for not asking more or different questions on cross-examination with regard to the facts as the witnesses saw them and with regard to any deal they may have struck with the people."  Docket No. 15-13 at 5.  In the instant Petition, Martinez argues that the determination was unreasonable because the record reflects that counsel was unaware of the terms of the witnesses' agreements, although he had received notice, and thus he could not have had a tactical reason for his omission.

But even assuming that counsel was deficient for failing to question the witnesses in the manner Martinez now suggests, the Court cannot find unreasonable or contrary to federal law the Superior Court's alternate determination that Martinez fails to show that he was prejudiced by counsel's actions.  With respect to Dyer's deal, Martinez fails to show that the outcome of his trial would have been different had the jury been informed that Dyer received probation rather

---

[2]    Trial counsel moved for a new trial on the ground that he did not have notice of the terms of the deals.  The prosecutor opposed the motion, attaching copies of the letters sent to counsel regarding the deals, and the trial court denied the motion.

than four years.  The jury had already heard that Dyer had received a substantial benefit for his

cooperation; it is not reasonably likely that the difference in terms would have caused a juror to

assess Dyer's credibility differently in light of that information.

Likewise, Martinez fails to show a reasonable probability that the outcome would have

been different if the jury had learned of Ruela's deal.  Unlike Dyer, whose testimony was

significantly adverse to Martinez's case, Ruelas testified only that he saw Martinez and Dyer

enter the victim's cell and struggle with him.  The Superior Court could therefore reasonably

conclude that, even if information regarding Ruelas's deal would have caused the jury to

disregard Ruelas's testimony, the outcome was not reasonably likely to have changed because

Ruelas's testimony was not central to the State's case.

Martinez next argues that trial counsel failed to investigate and present expert medical

opinion regarding the victim's injuries.  The Ninth Circuit remains sensitive to the issue of

retaining and consulting with defense experts.  *See, e.g.*, *Weeden v. Johnson*, 854 F.3d 1063,

1070-71 (9th Cir. 2017) (holding that trial counsel was deficient in failing to seek psychological

evaluation about effect of petitioner's youth on her mental state); *Richter v. Hickman*, 578 F.3d

944, 953-54 (9th Cir. 2009) (en banc) (trial counsel's failure to consult an expert in blood

evidence constituted ineffective assistance), *rev'd by Harrington v. Richter*, 562 U.S. 86 (2011).

The cases finding ineffective assistance based on defense counsel's failure to consult with an

expert or offer expert testimony appear to involve situations where the prospective defense

expert testimony would: 1) exonerate the defendant; 2) conflict with powerful expert testimony

offered by the Government; 3) significantly weaken adverse Government expert testimony; and

4) aid in preparing defense counsel's cross-examination of the adverse Government expert testimony.

Here, however, Martinez fails to demonstrate that the now-proffered expert evidence, which consists of declarations from a neuroradiologist and opthamologist, would have led to a different outcome in this case because the offered evidence lacks the probative value of the evidence in the cases cited above.  Indeed, the Petition does not present evidence that counsel did not seek such medical information.  It is entirely possible that counsel consulted with a medical expert but found the opinion unhelpful or adverse to Martinez's case.  Moreover, counsel's chosen defense at trial was that Dyer, not Martinez, had planned and carried out the attack.  Accordingly, it would have been a reasonable tactical decision on counsel's part to elicit testimony that would support the chosen defense strategy rather than adduce medical testimony regarding the extent of the victim's injuries, particularly given that the victim testified at trial that he did not remember the injury and denied that he had even been injured.

Nor is Martinez entitled to relief on his claim that counsel was ineffective for failing to move to sever under California Penal Code § 954[3] the other counts from the attempted mayhem count.  In denying the claim on state habeas review, the superior court found that a motion to sever would have been meritless.  That determination is binding on this Court on federal habeas review.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (a "state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court

---

[3] That section provides that "the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately."  CAL. PENAL CODE § 954.

sitting in habeas corpus"); *Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting that a state appellate court's determination of state law is binding and must be given deference).

Finally, Martinez claims that the cumulative effect of trial counsel's alleged errors warrant reversal of his conviction.  The Ninth Circuit has stated "[t]he Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting trial fundamentally unfair."  *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) (citing *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973)); *see also Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000).  "Cumulative error applies where, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors has still prejudiced a defendant."  *Jackson v. Brown*, 513 F.3d 1057, 1085 (9th Cir. 2008) (quoting *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000)).  Where "there are a number of errors at trial, 'a balkanized, issue-by-issue harmless error review' is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial against the defendant."  *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) (quoting *United States v. Wallace*, 848 F.2d 1464, 1476 (9th Cir. 1988)).

"While the combined effect of multiple errors may violate due process even when no single error amounts to a constitutional violation or requires reversal, habeas relief is warranted only where the errors infect a trial with unfairness."  *Peyton v. Cullen*, 658 F.3d 890, 896-97 (9th Cir. 2011) (citing *Chambers*, 401 U.S. at 298, 302-03).  Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citation omitted).  In other words, where the combined effect of individually harmless errors renders a criminal defense "far

less persuasive than it might [otherwise] have been," the resulting conviction violates due process. *See Chambers*, 401 U.S. at 294.

Here, the Superior Court rejected Martinez's cumulative error claim because it did not find any ineffective assistance with respect to any individual claims that "would rise to the level of state or federal 'constitutional dimension.'" Docket No. 15-13 at 6. Because, as discussed more thoroughly above, the Superior Court did not err in its determinations with respect to the individual claims, Martinez does not demonstrate federal constitutional errors that would establish prejudice in the aggregate. *See, e.g.*, *Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible."). In sum, Martinez is not entitled to relief on any argument advanced in support of his ineffective assistance of trial counsel claim.

## 2.   *Appellate Counsel*

Martinez further claims that appellate counsel rendered ineffective assistance by failing to argue on direct appeal that trial counsel should have: 1) cross-examined Dyer and Ruelas effectively; and 2) investigated and presented expert medical testimony. But because he fails to show that trial counsel was ineffective in those respects, Martinez fails to demonstrate that appellate counsel was deficient for not raising the ineffective assistance claims on direct appeal, or that he was prejudiced by the omission. *See, e.g.*, *Morrison v. Estelle*, 981 F.2d 425, 429 (9th Cir. 1992) (finding that a claim of ineffective assistance of appellate counsel on the ground that counsel failed to argue inadequate notice of the charge must fail because counsel "would not have been successful"). For the same reasons, Martinez is not entitled to relief on his cumulative

error claim premised on appellate counsel's actions.  Martinez is therefore not entitled to relief on this ground either.

V. CONCLUSION AND ORDER

Martinez is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: April 21, 2021.

   /s/James K. Singleton, Jr.    <br>JAMES K. SINGLETON, JR.<br>Senior United States District Judge

14